UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KIMBERLY D. TOPPS, | § | |
|     *Plaintiff*, | § | |
| v. | § | CIVIL ACTION NO. 4:11-CV-3096 |
| | § | |
| HONEYWELL INTERNATIONAL, INC., | § | |
|     *Defendant.* | § | |

## MEMORANDUM AND ORDER

This discrimination, retaliation, harassment, and negligence suit is before the court on defendant Honeywell International, Inc.'s motion for summary judgment.[1]  The motion is granted.

**1.**[2]

In October 2006, Honeywell hired Plaintiff Kimberly D. Topps as a senior software engineer.  Her first assignment was to lead a software team working on the Orion Flight Software Project.  Nine months into the assignment, Ronald Hundley, the Orion Project manager, began to receive complaints about Topps's technical production and management style.  Hundley removed Topps from the lead position, but allowed her to continue working

---

[1] Dkt. 13.

[2] Topps objects to almost all of the evidence Honeywell offers in support of its motion.  However, each of these objections are unfounded.  Honeywell's various business records, including Topps's performance reviews, performance improvement plan, and letters of expectation are admissible even if they contain both non-hearsay and hearsay evidence.  See Fed. R. Evid. 803(6).  Moreover, the declarations of Topps's former supervisors, Berning, Blumentritt, and Hundley are also admissible.  Although Topps claims her supervisors' declarations are based on hearsay statements made by other employees, this Court finds that such statements are admissible to establish the supervisors' state of mind leading up to their various disciplinary decisions.

on the project. Thereafter, Michael Berning became her direct supervising technical manager.

In early 2008, Berning completed Topps's first annual performance review. Berning rated Topps "Below Honeywell Standard" in several behavior assessment categories and advised her to improve both her technical and teamwork skills. Each of Topps's subsequent annual performance reviews, mid-year performance reviews, and letters of expectations ("LOE") contained similar advice and criticisms.

Topps, however, strenuously disagreed with Berning's critiques and, over the course of her employment, she filed several rebuttal letters. Topps also filed two complaints against Berning. On January 29, 2009, she first complained of unfair treatment after Berning confiscated her computer to investigate whether she worked on personal business during company time — the investigation revealed she had. On May 29, 2009, Topps again complained that Berning discriminated against her; after an internal investigation could not substantiate her claims, on August 30, 2009, Topps filed a charge of discrimination with the Equal Employment Opportunity Commission alleging race, sex, and disability based discrimination and retaliation.

Ultimately, Berning placed Topps on a Performance Improvement Plan ("PIP"). The plan called for Topps to immediately improve her performance, including her technical proficiency, execution of assigned tasks, and communication skills. As a condition of the PIP, Topps was required to complete a mock customer presentation to demonstrate her

technical proficiency and communication skills. Topps completed the presentation but received negative feedback that was consistent with prior negative feedback. A few days later, she was fired for failure to perform at the technical level required of her position.

Topps filed an amended charge with the EEOC alleging her termination was in retaliation for her original EEOC charge; and thereafter, instituted this suit asserting claims for employment discrimination, harassment, and retaliation under Title VII, Section 1981, and the Texas Commission on Human Rights Act, as well as claims of negligent hiring, training, supervision, and retention under Texas law.

**2.**

The standards for summary judgment in an employment discrimination case are by now too familiar to warrant recitation. *See* FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49 (2000).

**Race Discrimination.** Topps, who is African-American, contends she was fired while Louise Li, an Asian employee, was treated more favorably under similar circumstances. Honeywell counters that: (1) Li was not similarly situated to Topps and (2) Topps's documented unsatisfactory job performance is its legitimate, nondiscriminatory reason for her termination. Consistent with Honeywell's argument, this Court is not persuaded that Li is "similarly situated" to Topps. Michael Berning's deposition testimony,

upon which Topps exclusively relies,[3] merely establishes that Li received a negative evaluation in 2008 because her public speaking and developmental planning skills needed improvement.[4] In contrast, Topps received negative feedback in several consecutive performance evaluations, was placed on a PIP, and ultimately failed to satisfy the terms of the PIP. Given the dissimilar job perfromance histories of Topps and Li, this Court finds that Li is not a similarly situated comparator. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). Honeywell is entitled to summary judgment on this claim.

**Sex Discrimination.** Topps alleges that Honeywell failed to promote her to the senior technical manager position because she is a woman.[5] She contends that only three internal candidates were selected to interview for the position, and all of them were males. Honeywell responds that Topps was not promoted because she did not meet the qualifications for the position and a woman was ultimately hired to fill the position. When questioned regarding her qualification for the technical manager position, Topps acknowledged that the job description stipulated that a candidate have 15 years experience, and that she did not have such experience.[6] Further, Topps also acknowledged that a woman who was qualified, Karen

---

[3] Dkt. 19, at 21 - 22.

[4] Berning Dep. 97 - 101.

[5] Topps also claims that she was not selected to work on a specific assignment with Mr. Goldman. This assignment would not have affected her seniority status or compensation. The denial of a lateral transfer is not an adverse employment action.

[6] Topps Dep. 103.

Blumentritt, was ultimately hired to fill the vacant position.[7]  Given those facts, Honeywell is entitled to summary judgment on this claim.  *See Jefferies v. Harris Cnty. Cmty. Action Ass'n*, 615 F.2d 1025, 1030 (5th Cir. 1980) ("[W]here both the person seeking to be promoted and the person achieving that promotion were women . . . we cannot accept sex discrimination as a plausible explanation for the promotion decision.") (citation and quotation marks omitted).

**Disability Discrimination**.  Topps alleges that she was subject to discrimination based on her disability — carpal tunnel syndrome.  Topps first claims that between August and October 2008, Honeywell failed to provide an accommodation, ergonomic office equipment.  This claim is time-barred, however, because Topps's EEOC complaint was filed on August 30, 2009, and thus extends only to those claims that occurred after November 3, 2008.  42 U.S.C. § 2000e-5(e).

Topps next claims that after she refused to relocate to a workstation without her accommodation, Berning labeled her as not being a "team player" in her 2009 performance evaluation and its attendant LOE.  Topps argues Berning's "poor evaluation caused [her] to be denied a merit increase and affected her job assignments and career opportunities."  However, Berning's "team player" criticism is only one of many negative critiques contained in Topps's 2009 performance evaluation and its attendant LOE.  Topps has offered no

---

[7] *Id.*

evidence indicating that but for Berning's "team player" criticism, she would not have received a poor evaluation in 2009. Because Topps has failed to establish a causal connection between her disability and the purported adverse employment decision she suffered, Honeywell is entitled to summary judgment on this claim.

**3.**

Topps also claims that she was disciplined and ultimately fired in retaliation for filing complaints with the company's ethics hotline in May 2009 and the EEOC in August 2009. This claim relies solely on temporal proximity to demonstrate causation. While mere temporal proximity sometimes raises an inference of discrimination, that inference is negated where, as here, the employer's adverse employment decisions predate the employee's protected activity. *See Strong v. Univ. Healthcare Sys.*, L.L.C., 482 F.3d 802, 808 (5th Cir. 2007) (citation omitted). Honeywell is entitled to summary judgment on this claim.

**4.**

To establish her hostile work environment claim Topps must demonstrate that Berning subjected her to harassment because of her race. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Topps bases her claim on a variety of evidence having little or nothing to do with race: Topps was given a written warning for violating Honeywell's Code of Conduct regarding the use of company property; she was required to "sit in the front" during a meeting; Hundley made comments about her in the break room; and Berning allowed other

employees to speak to her in an unspecified offensive manner. This evidence, even if true, simply does not demonstrate that Berning harassed Topps because of her race. Topps also relies on testimony from a coworker (Jackson) who reported that another coworker told him (Jackson) that Topps should "watch out" because Berning had a problem dealing with black women. This is inadmissible hearsay (and double hearsay), and insufficient to raise a triable issue of fact. Honeywell is entitled summary judgment on this claim.

**5.**

Topps also argues that Honeywell is liable for negligent hiring, training, supervision or retention. To prevail on this claim Topps "is required to establish not only that the employer was negligent in hiring or supervising the employee, but also that the employee committed an actionable tort against the plaintiff." *Brown v. Swett & Crawford of Tex., Inc.*, 178 S.W.3d 373, 384 (Tex. App.–Houston [1st Dist.] 2005). Topps seems to argue that harassment is an actionable tort in Texas. This Court, however, is unaware of — and Topps has failed to identify — any authority for the proposition that Texas recognizes harassment as an actionable tort. Accordingly, Honeywell is entitled to summary judgment on this claim.

**6.**

For these reasons, Honeywell's motion for summary judgment is granted.

Signed at Houston, Texas on May 30, 2013.

Stephen Wm Smith
United States Magistrate Judge